South32 Chile Copper Holdings Pty Ltd v Sumitomo Metal Min. Co., Ltd. (2024 NY Slip Op 50789(U))

[*1]

South32 Chile Copper Holdings Pty Ltd v Sumitomo Metal Min. Co., Ltd.

2024 NY Slip Op 50789(U)

Decided on June 27, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2024
Supreme Court, New York County

South32 Chile Copper Holdings Pty Ltd 
 (Formerly Blue Murray Pty Ltd), Plaintiff,

against
Sumitomo Metal Mining Co., Ltd., Sumitomo Corporation, Defendant.

Index No. 650642/2023

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 were read on this motion to DISMISS.
In this commercial contract action, defendants Sumitomo Metal Mining Co., Ltd. (Sumitomo Metal) and Sumitomo Corporation (Sumitomo Corp.) (together, Sumitomo or defendants) move to dismiss the complaint (motion seq. no. 001). For the following reasons, this motion is denied.
BACKGROUND
Plaintiff South 32 Chile Copper Holdings Pty. Ltd. (f/k/a Blue Murray Pty. Ltd.; hereinafter, South 32 or plaintiff) is an Australian limited liability company. It is a wholly owned subsidiary of non-party, South32 Limited, an Australian mining and metals company incorporated for the purpose of acquiring Sumitomo's (a Japanese corporation) interest in the Sierra Gorda copper mine in Chile (see Complaint, NYSCEF doc. no. 1, ¶¶ 1, 12). Formerly, Sumitomo held a 45% ownership interest in the Sierra Gorda mine. Non-party KGHM Polska Mied S.A. (KGHM), a Polish company, held the remaining 55% ownership interest (id., ¶ 16). 
Sumitomo purportedly provided its portion of the financing necessary to operate the mine by loans issued by SMM Holland B.V. (SMM) and SC Sierra Gorda Finance B.V. (SGF), two non-party Dutch finance corporations with which Sumitomo had contracted (id., ¶¶ 3, 16-17).
On October 14, 2021, the Sumitomo defendants executed sale and purchase agreements (SPAs), to transfer their interest in the Sierra Gorda mine to South32 (see NYSCEF doc. no.1, ¶¶ 1, 50-51). The identical SPAs each contain a provision regarding the allocation of tax liability for profits actualized from mining operations. The provisions state:
"6.11 Tax Matters.
* * *
"(b) Tax Returns.
* * *
"(iii) Subject to the following sentence, in the case of any Tax Return relating to a Straddle Period due after the Closing Date, at the time that Seller or Buyer, as applicable, provides a copy of the final draft of such Tax Return to Buyer or Seller, as applicable, Seller or Buyer, as applicable, shall also provide a notice setting forth the amount of the Pre-Closing Taxes of the applicable Holding Company (if any) that is included therein, and Seller shall pay to Buyer or the applicable Holding Company (as designated by Buyer), no later than five (5) Business Days prior to the time such amount is due to the applicable Tax Authority (provided that Seller shall have received the related payment request notice from Buyer at least fifteen (15) Business Days prior to the time such amount is due to the applicable Tax Authority), the amount of such Pre-Closing Taxes to the extent that such proportion of the Pre-Closing Taxes was not treated as a liability in the Closing Indebtedness Amount or the Closing Working Capital Amount as finally determined pursuant to Section 1.4 (c) or otherwise been paid by Seller; provided that, with respect to any Pre-Closing Taxes of Direct Shareholder, Seller shall pay only seventy percent (70%) of the amount of such Pre-Closing Taxes. If Buyer or Seller disagrees with respect to the amount of Pre-Closing Taxes of the Holding Companies (if any) determined by Seller or Buyer, as applicable, in accordance with the preceding sentence, Buyer and Seller shall mutually select and appoint an impartial independent tax advisory firm of recognized international standing (other than Buyer's, Seller's or their respective Affiliates' then-current tax advisor) (a "Tax Expert"), to determine the proper amount of Pre-Closing Taxes of the Holding Companies. If Seller fails to pay the amount it is required to pay pursuant to this clause (iii) at or prior to the time that such amount is due to the applicable Tax Authority, such amount shall be paid together with Interest on such amount, calculated from such due date."
(id., NYSCEF doc. nos. 32, 33).
Plaintiff alleges that in November 2021 (after the SPAs had closed) SMM instructed its accountant to contact the Dutch Tax Authority to request an advisory opinion concerning tax liability for profits realized from operations at the Sierra Gorda mine. The complaint alleges that the Dutch Tax Authority refused to provide an advisory opinion (see NYSCEF doc. no. 1, ¶ 5), and SMM and SGF thereafter informed South32 that they were taking the position that South32 was liable for any taxes imposed by the Dutch Tax Authority (id., ¶¶ 5, 65). Plaintiff further alleges that SMM's and SGF's Dutch tax returns for the tax year 2021 reported a liability for taxes and penalties in the amount of approximately $73,931,589, which South32 paid to the Dutch Tax Authority (id., ¶¶ 93-100). Plaintiff finally alleges that it demanded that Sumitomo reimburse South32 for that tax payment pursuant to section 6.11 (b) (iii) of the SPA, but that Sumitomo has refused to do so (id., ¶¶ 101-107).
As a result, plaintiff commenced this action on February 2, 2023 by serving a summons and complaint that sets forth causes of action for breach of contract and declaratory judgment (see NYSCEF doc. no. 1, 4). Rather than answer, Sumitomo filed the instant motion to dismiss pursuant to CPLR 3211 (a) (7) (id., NYSCEF doc. nos. 29-37). 

DISCUSSION
As mentioned, Sumitomo's motion seeks dismissal of the complaint pursuant to CPLR 3211 (a) (7). When considering such a motion, the court must afford the pleadings a liberal construction, accept all facts as alleged therein to be true, accord the plaintiff the benefit of every [*2]possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (1650 Broadway Associates, Inc. v Sturm, 210 NYS3d 19, 2024 NY Slip Op 01864, *2 [1st Dept 2024], citing Leon v Martinez, 84 NY2d 83, 87—88 [1994]). 
South32's first cause of action alleges breach of contract (see NYSCEF doc. no. 1, ¶¶ 108-117). The proponent of a breach of contract claim must plead the existence and terms of a valid, binding contract, its breach, and resulting damages (see e.g. Gordon v Dino De Laurentiis Corp., 141 AD2d 435 [1st Dept 1988]; see also Eden Temporary Servs. v House of Excellence, 270 AD2d 66, 67 [1st Dept 2000], quoting, Paz v Singer Co., 151 AD2d 234, 235 [1st Dept 1989]["[T]he burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it"]. 
Here, the complaint clearly pleads all the requisite elements of a breach of contract claim. Sumitomo nevertheless argues that "the SPAs unambiguously allocate responsibility for the disputed taxes to South32," and that "South32's contrary interpretation of the SPAs is fundamentally flawed" (see, defendants' mem of law, NYSCEF doc. no. 30, at 11-21). Sumitomo's arguments request the court to analyze section 6.11 (b) (iii) along with several other provisions of the SPA and to determine whether Sumitomo's admitted refusal to reimburse plaintiff for the cost of the Dutch tax assessment constitutes a breach of the SPA. 
Plaintiffs' opposition papers present its arguments in support of its interpretation of the SPA's tax liability provision (see NYSCEF doc. no. 43 at 9-20). Sumitomo's reply merely restates its original arguments (see NYSCEF doc. no. 44 at 2-14). The court declines to address those arguments at this juncture. 
On a motion for summary judgment, the construction of an unambiguous contract is a question of law for the court to consider. Extrinsic evidence to the agreement or varying interpretations of the contract provisions will not be considered where the intention of the parties can be gathered from the instrument itself (Friedlander v Jack's Holdings Inc., 203 AD3d 573, 575 [1st Dept 2022], quoting Lake Constr. & Dev. Corp. v City of New York, 211 AD2d 514, 515 [1st Dept 1995]). What is before the court at present, however, is a motion to dismiss.
On a motion to dismiss for failure to state a claim pursuant to CPLR 3211 (a) (7), the standard of review is as stated above — to give the complaint a liberal reading and determine only whether the plaintiff has stated a cause of action, not to determine the validity of that cause of action. To assess the merits of the claims, at this juncture, would be premature under New York law.
The court is aware that CPLR 3211 (c) permits it to treat a motion to dismiss as a motion for summary judgment either upon the request of the parties or on its own initiative where the parties "'deliberately chart[ ] a summary judgment course'" by submitting admissible fact evidence to support their arguments (see e.g. Cooney v City of NY Dept. of Sanitation, 127 AD3d 629, 630 [1st Dept 2015], quoting Mihlovan v Grozavu, 72 NY2d 506, 508 [1988]). The parties have not made such a request in this case, nor can it be said that they have "charted a summary judgment course." Therefore, the facts of this case do not indicate that CPLR 3211 (c) should be applied so that the court could review the merits of Sumitomo's contractual interpretation arguments at this juncture. Plaintiff's first cause of action is adequately pled for the purposes of CPLR 3211 (a) (7), and the court denies defendants' motion to dismiss pursuant to that statute.
South32's second cause of action seeks declaratory relief (see NYSCEF doc. no. 1, ¶¶ 118-121). Pursuant to CPLR 3001, declaratory judgment is a discretionary remedy which may be granted "as to the rights and other legal relations of the parties to a justiciable controversy [*3]whether or not further relief is or could be claimed" (see e.g. Jenkins v State of NY, Div. of Hous. & Community Renewal, 264 AD2d 681 [1st Dept 1999]). 
Here, the complaint pleads that there is a justiciable controversy between the parties over the correct interpretation of section 6.11 (b) (iii) of the SPA (see NYSCEF doc. no. 1, ¶ 120). Sumitomo's moving and reply papers are devoid of any arguments against the request for declaratory relief. Therefore, the court finds that plaintiff's second cause of action is also adequately pled for the purposes of CPLR 3211 (a) (7) and denies defendants motion to dismiss pursuant to that statute.
Accordingly, for the foregoing reasons, it is hereby
ORDERED that the motion, pursuant to CPLR 3211, of defendants Sumitomo Metal Mining Co., Ltd. and Sumitomo Corporation (motion seq. no. 001) is denied; and it is further
ORDERED that the balance of this action shall continue in accordance with the status conference order entered by the court on June 14, 2024 (NYSCEF doc. no. 91).
DATE June 27, 2024
Robert R. Reed, J.S.C.